# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LINDA YAMAN, on behalf of herself and minors KY and EY,

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF STATE, et al.,

      Defendants.

Civil Action No. 10-00818 (JDB)

## MEMORANDUM OPINION & ORDER

On May 17, 2010, Linda Yaman ("plaintiff"), a dual U.S.-Turkish citizen, filed this action on her own behalf and on behalf of her two minor daughters, who are also dual U.S.-Turkish citizens currently residing with plaintiff in the United States. In her complaint, plaintiff seeks review under the Administrative Procedure Act ("APA") of the State Department's decision to grant her daughters direct return, limited validity passports rather than unrestricted passports. In related litigation, which has now been consolidated with this case, plaintiff seeks to obtain a copy of the written findings and recommendation of the hearing officer who presided over her daughters' administrative passport proceedings. See Yaman v. U.S. Dep't of State, 709 F. Supp. 2d 85, 89 (D.D.C. 2010), *vacated and remanded*, 634 F.3d 610, 614 (D.C. Cir. 2011). Presently before the Court is plaintiff's motion for leave to file her address under seal and ex parte, and for leave to file portions of her motion in support thereof under seal as well. See Pl.'s Mot. for Leave to File Under Seal ("Pl.'s Mot.") [Docket Entry 50]. Defendants oppose plaintiff's request to file her address under seal and ex parte, arguing that plaintiff's address is required by Local Civil

-1-

Rules 5.1(e) and 11.1 and is "pertinent to ongoing matters": namely, the alleged attempts of plaintiff's ex-husband to file a petition under the Hague Convention, seeking the return of his daughters to Turkey. See Defs.' Mot. to Compel [Docket Entry 42] at 5. For the reasons detailed below, the Court will grant plaintiff's motion to file her address under seal and ex parte.

## BACKGROUND

The present dispute arises against the backdrop of an international custody battle. Between January 2003 and December 2004, plaintiff lived in Turkey with her now ex-husband, Ismail Ozgur Yaman ("Mr. Yaman"), and their two minor daughters, EY and KY. See First Am. Compl. (Redacted) [Docket Entry 20] ¶ 8. After plaintiff began to suspect that Mr. Yaman was sexually abusing at least one of their daughters, the couple commenced divorce proceedings. Id. ¶ 9. The Turkish Family Court that oversaw the divorce awarded full custody of EY and KY to Mr. Yaman, despite the allegations that he had committed sexual abuse. Id. However, Mr. Yaman did not exercise his custody rights, and EY and KY continued to reside with plaintiff in Turkey, although Mr. Yaman visited them on a weekly basis. Id. ¶ 10. In or around August 2007, following the denial of plaintiff's appeal of the custody order, plaintiff and her daughters fled Turkey for an undisclosed European location. Id. ¶ 11.

Mr. Yaman retained EY and KY's original U.S. passports and refused to provide them to plaintiff, or to consent to the issuance of new passports for the girls. Id. ¶ 12. Plaintiff therefore applied for new passports for her daughters at a U.S. Consulate abroad, seeking a waiver of the requirement that both parents must consent to the issuance of a minor's passport. Id. ¶¶ 13-14. The State Department initially denied plaintiff's request, id. ¶ 15, but after plaintiff filed an administrative appeal, the Department held a hearing on the matter (over which a hearing officer

presided), id. ¶¶ 16, 20-21, and the Deputy Assistant Secretary issued a final decision granting EY and KY limited, one-way passports for travel to the United States, id. ¶¶ 29, 33. Plaintiff and her daughters then used the passports to come to the United States in April 2010. Id. ¶ 11.

When plaintiff filed this complaint in May 2010, she and her daughters had not yet established a permanent residence in the country. See Pl.'s Mot. to Use Different Address [Docket Entry 4] at 1. The Court therefore granted plaintiff's request to list her counsel's address on the complaint "until such time as Plaintiffs have established a permanent residential address in the United States." See 5/17/10 Order [Docket Entry 5]. On February 10, 2011, plaintiff filed a "Notice of Change of Address," in which she listed her mother's address in Michigan as her "permanent residential address." See Notice of Change of Address ("Notice") [Docket Entry 41]; see also Pl.'s Opp. to Defs.' Mot. to Compel ("Pl.'s Opp.") [Docket Entry 45] at 2. Specifically, plaintiff noted that her "permanent residential address" was the Michigan address, "c/o Karen Polizzi" -- i.e., "in care of" her mother. See Notice.

Defendants responded with a motion to compel plaintiff to comply with the May 17, 2010 Order, arguing that the Order -- as well as the Court's local rules -- require plaintiff to file a notice indicating where she and her daughters are currently living, and that because of the "c/o" designation in plaintiff's notice, it is unclear whether plaintiff and her daughters actually reside at the Michigan address. See Defs.' Mot. to Compel at 4 (citing Local Civ. R. 5.1(e)(1)). Defendants further explained that the State Department needs to know the location of plaintiff and her children so that it can fulfill its obligations under the Hague Convention, as implemented by the International Child Abduction Remedies Act ("ICARA"). See Defs.' Reply in Supp. of Defs.' Mot. to Compel at 3-6. According to the State Department, Mr. Yaman has requested its

assistance in filing a petition under the ICARA to have his daughters returned to Turkey, and the State Department needs to ascertain plaintiff's address so that it can advise Mr. Yaman as to the appropriate jurisdiction in which to commence these proceedings. Id. at 3-4.

Plaintiff opposed the motion to compel, asserting that her mother's address was, in fact, her "permanent" residential address, and that she need not disclose where she and her daughters had been "temporarily living since arriving in the country" for purposes of compliance with the local rules and this Court's May 17, 2010 Order. See Pl.'s Opp. at 2.[1] As for the State Department's desire to obtain plaintiff's address to fulfill its alleged obligation under the ICARA, plaintiff argued that the Department had no such obligation, and that the Department was merely seeking "to use this Court to serve its own purposes in obtaining information to which it is not otherwise entitled." See id. at 5-6. On March 1, 2011, this Court held a telephonic status conference to discuss the parties' respective positions on the matter, and ordered that plaintiff provide her current "full residence address" -- i.e., where she and her children physically reside -- to the Court by not later than March 4, 2011. See 3/2/11 Order [Docket Entry 49]. The Court noted, however, that plaintiff could move to file her "full residence address" under seal and ex parte, if she believed that such a course of action was necessary. Id.

Plaintiff has now filed such a motion, in which she seeks leave to file her full residence address, as well as portions of the motion itself, under seal and ex parte. Plaintiff argues that such measures are necessary to protect the safety of her minor daughters; defendants counter that

---

[1] Along with her opposition to defendants' motion to compel, plaintiff filed a motion for leave to file attachments to her opposition under seal. See Pl.'s Mot. for Leave to File Attachments Under Seal [Docket Entry 46]. Because the Court has already granted defendants' motion to compel, the Court will terminate plaintiff's motion for leave to file attachments under seal as moot.

plaintiff should not be "permitted to evade service and frustrate proceedings under the Hague Convention through a special dispensation in these tangentially related proceedings." See Defs.' Opp. to Pl.'s Mot. ("Defs.' Opp.") [Docket Entry 54] at 4.

## DISCUSSION

Under Local Civil Rules 5.1(e)(1) and 11.1, a party is required to provide both her name and "full residence address" in her first filing with the Court. However, just as "it is within the discretion of the district court to grant the 'rare dispensation' of anonymity," U.S. v. Microsoft, 56 F.3d 1448, 1464 (D.C. Cir. 1995); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008) (explaining that "a plaintiff may be allowed to maintain an action under a pseudonym" where the plaintiff's interest in anonymity outweighs "the public interest in disclosure and any prejudice to defendant"), so, too, may a court permit the filing under seal of a party's address where the circumstances so require, see, e.g., Newdow v. Roberts, No. 09-5126 (D.C. Cir. July 19, 2009) (granting motion for leave to submit child-identifying information under seal, and directing the parties "to file under seal any information, including addresses, that could lead to the identification of any appellant who is a minor") (emphasis added).

Despite "this country's strong tradition of access to judicial proceedings," there are situations in which "a party's interest in privacy or confidentiality . . . outweighs this strong presumption in favor of public access." Johnson v. Greater Se. Cmty. Hosp. Corp., 951 F.2d 1268, 1277 (D.C. Cir. 1991). Courts assessing the need for a sealing order generally apply the factors enumerated by the D.C. Circuit in United States v. Hubbard, 650 F.2d 293, 317-22 (D.C. Cir. 1980). There, the court examined whether the public should be granted access to documents that the government had seized from the Church of Scientology, and that Church officials under

indictment subsequently introduced during a pre-trial suppression hearing. Id. at 296-98. In reversing and remanding the lower court's decision to unseal the documents, the D.C. Circuit identified several factors for courts to consider in assessing the propriety of a sealing order, including "(1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced." Johnson, 951 F.2d at 1277 (citing Hubbard, 650 F.2d at 317-22). Defendants urge this Court to apply these six Hubbard factors in evaluating plaintiff's motion to file her address under seal and ex parte. See Defs.' Opp. at 2-3.

But given the nature of the information that plaintiff seeks to file under seal and ex parte, it seems more appropriate to examine plaintiff's request using the framework that courts have developed to decide whether a plaintiff should be allowed to proceed anonymously. See, e.g., Nat'l Ass'n of Waterfront Emp'rs v. Chao, 587 F. Supp. 2d 90, 99 (D.D.C. 2008) (outlining factors for courts to consider in assessing a plaintiff's request to proceed under a pseudonym); Doe #1 v. Von Eschenbach, 2007 WL 1848013, at *2 (D.D.C. June 27, 2007) (same). Plaintiff's sole objection to the public release of her address is that it would allow Mr. Yaman to identify the location of his two minor daughters, EY and KY, who are currently residing with plaintiff. In essence, then, plaintiff is simply requesting that all of her minor daughters' identifying information -- not just their names -- be kept private. The privacy interests at stake here are thus more comparable to those at stake when a party seeks to proceed anonymously than to those at stake when a party seeks to preserve the confidentiality of documents that it introduced during a

pre-trial suppression hearing, as was the case in Hubbard.

Hence, plaintiff's request to file her address under seal and ex parte will be assessed by applying the factors that courts in this Circuit have used to determine whether a plaintiff should be allowed to proceed anonymously.[2] In making that determination, courts examine "(1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing

---

[2] The Court notes, however, that the outcome of its analysis would be the same under Hubbard. With respect to the first Hubbard factor, there is no need for public access to plaintiff's address in connection with this litigation. Although the State Department maintains that Mr. Yaman needs to know plaintiff's address in order to seek relief under the ICARA, Mr. Yaman's alleged interest in obtaining the return of his daughters to Turkey is not related to this litigation, which concerns only the propriety of the State Department's decision to grant EY and KY limited, restricted passports. As for the second Hubbard factor -- whether the public has previously been able to access the information now sought to be protected -- it does not appear that plaintiff's current address has ever been made public. See Hubbard, 650 F.2d at 318 (explaining that "[p]revious access is a factor which may weigh in favor of subsequent access"). The third, fourth, and fifth Hubbard factors also weigh in favor of allowing plaintiff to file her address under seal and ex parte. Plaintiff has vigorously objected to the public disclosure of her address on the ground that it could jeopardize the safety of her minor daughters by enabling Mr. Yaman -- who has been accused of sexual abuse -- to locate the girls. Given the gravity of the harm that could result if plaintiff's allegations and resulting fears are true, plaintiff's interest in maintaining the privacy of her address is paramount. Finally, the last Hubbard factor-- the purpose for which the information was introduced -- also militates against public disclosure here. Plaintiff's address was not introduced because it was somehow relevant to the substance of these proceedings; instead, plaintiff only filed a Notice of Address in order to comply with Local Civil Rules 5.1(e)(1) and 11.1, which require the disclosure of a "full residence address" to facilitate service of process and effective communication between the parties. Neither of these purposes would be undermined by permitting plaintiff to file her address under seal and ex parte.

an action against it to proceed anonymously." Nat'l Ass'n of Waterfront Employers, 587 F. Supp. 2d at 99. Where an action is brought against a government entity rather than a private party, or where it involves the privacy interests of minor children, courts are more likely to allow a plaintiff to proceed anonymously. See Von Eschenbach, 2007 WL 1848013, at *2.

Here, each of these six factors militates in favor of allowing plaintiff to preserve the confidentiality of all of her daughters' identifying information, including their address. To begin with, plaintiff's proffered justification for seeking to file the address under seal and ex parte -- a desire to protect the safety of EY and KY from Mr. Yaman, who has allegedly subjected them to sexual abuse in the past -- is both serious and legitimate, and not "vague and unsubstantiated." Id. For purposes of this motion, the Court need not determine whether the accusations against Mr. Yaman are true; it is sufficient that plaintiff has presented specific evidence tending to show that disclosure of any of her daughters' identifying information, including their address, has the potential to place them at grave risk of physical and emotional harm at the hands of their father. Moreover, the interests that plaintiff seeks to protect are those of her minor daughters, and plaintiff's motion must be assessed "in light of the special vulnerability of these child-plaintiffs." Doe v. Stegall, 653 F.2d 180, 186 (5th Cir. 1981); see also Doe v. Porter, 370 F.3d 558, 561 (6th Cir. 2004) (finding that court did not abuse its discretion by allowing plaintiffs to proceed anonymously, where case was "brought on behalf of very young children, to whom we grant a heightened protection"); Doe v. Del Rio, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) (explaining that courts are more inclined to protect the privacy interests of children than adults, "whether because children are conceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation") (internal citations omitted).

The Court also finds that the State Department -- the opposing party in this litigation -- would not be unfairly prejudiced by an order allowing plaintiff to file her address under seal and <u>ex parte</u>. The State Department claims that it needs plaintiff's address to assist Mr. Yaman in filing a petition under the Hague Convention, seeking the return of his daughters to Turkey. The ICARA, which implements the Convention, does provide that "[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so . . . by filing a petition for the relief sought in any court . . . which is authorized to exercise jurisdiction in the place <u>where the child is located at the time the petition is filed</u>." 42 U.S.C. § 11603(b) (emphasis added). Hence, Mr. Yaman would need to ascertain his daughters' location in order to determine the proper jurisdiction in which to file his petition under the Convention. The State Department, as "Central Authority" under the Convention, is under an obligation "to facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child" and to "take all <u>appropriate</u> measures . . . to discover the whereabouts of a child who has been wrongfully removed or retained" (emphasis added). <u>See</u> International Child Abduction Convention Between the United States of America and Other Governments Done At the Hague, Oct. 25, 1980, T.I.A.S. No. 11,670 Art. 7(f),(a); <u>see also</u> 22 C.F.R. § 94.6(b) (explaining with respect to applications under the Convention that the U.S. Central Authority shall "[c]onfirm the child's location, or, where necessary, seek to ascertain its location"). For this reason, the State Department argues, it "cannot proceed under its Convention obligations until it determines with some certainty the location of the children, at least the city and state." Defs.' Opp. at 6.

That may be so. But this litigation is not at this time the appropriate forum through which to obtain that information. Nor is this Court under any obligation to order the release of

plaintiff's address simply because it may be useful to the State Department (or Mr. Yaman) in other, unrelated, not yet initiated proceedings. The State Department and its officers, who are the sole defendants in this case, are in no way prejudiced by an order allowing plaintiff to file her address under seal and <u>ex parte</u>. Plaintiff has not sought to litigate her entitlement to custody of her minor daughters, nor has she asserted any claims against Mr. Yaman. Instead, she only seeks to challenge (1) the State Department's decision to refuse to provide her with access to the written findings and recommendation of the hearing officer who presided over her daughters' administrative passport proceedings; and (2) the State Department's decision to grant her daughters direct return, limited validity passports rather than unrestricted passports. In mounting its defense to these challenges, the State Department has no need to know the specific state and city in which plaintiff currently resides. For purposes of this litigation, then, the Court finds that at this time plaintiff's interest in protecting the safety of her minor daughters outweighs any alleged State Department interest in obtaining plaintiff's address for purposes unrelated to the current dispute between the parties.[3]

Accordingly, it is hereby **ORDERED** that [50] plaintiff's motion for leave to file her Notice of Change of Address under seal and <u>ex parte</u>, and for leave to file portions of the motion in support thereof under seal, is **GRANTED**; and it is further

**ORDERED** that plaintiff's Notice of Change of Address, as well as the portions of the motion in support thereof that were submitted to the Court under seal and <u>ex parte</u>, shall remain under seal and <u>ex parte</u>, pending further order of the Court.

---

[3] The Court leaves for another day the question whether changed facts and circumstances could alter this assessment.

**SO ORDERED**.

                                                             /s/
                                      JOHN D. BATES
                              United States District Judge

Dated: May 16, 2011